UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-07-315 |
| | § | |
| GIDEON WILLIAM MCDONALD | § | |

**ORDER**

On November 19, 2007, the Court conducted a hearing in the above-styled action. At the hearing the Court made the following ORDERS:

1. "Defendant's Partially Unopposed Motion in Limine to Exclude Evidence" (D.E. 23), filed August 28, 2007, is GRANTED IN PART and DENIED IN PART, as follows:

   A. Pursuant to the agreement of the parties (D.E. 23, at 2), the Court GRANTS Defendant's request to exclude any evidence of, or reference to, Defendant's 1992 conviction for manslaughter. Should the Defendant testify, either party may request that the Court reconsider this ruling; any such request must be made outside the presence of the jury.

   B. The Court DENIES Defendant's request to exclude evidence of the following two factual assertions: (1) that Defendant told Border Patrol agents he was a U.S. citizen, and (2) that Defendant in fact was not a U.S. citizen. Each of these assertions are relevant to prove Count Two of the Superseding Indictment.[1] These assertions also are

---

[1] Count Two of the Superceding Indictment charges Defendant as follows:
On or about May 15, 2007, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant, Gideon William McDonald, a citizen of Jamaica, did falsely and willfully represent himself to be a citizen of the United States, in that the defendant stated to a United States Customs and Border Protection (hereinafter CBP) Agent at the Falfurrias, CBP Checkpoint that he was a citizen of the United States knowing, at that time,

relevant to prove Count One of the Superseding Indictment.[2]  See U.S. v. Romero-Reyna, 867 F.2d 834, 836 (5th Cir. 1989) (holding that the government must prove the knowing possession of the contraband with intent to distribute, and that, inter alia, the fact that the defendant lied to agents, falsely claiming to be a U.S. citizen "constituted evidence of a consciousness of guilt").

The Government has agreed not to attempt to prove any of the above assertions through evidence of Defendant's prior removal order.  (D.E. 24, at 1.)

Defendant's motion in limine with respect to Defendant's Jamaican citizenship is GRANTED.  The Government may move the Court outside the presence of the jury should the Government wish to produce any evidence of, or otherwise make any reference to, Defendant's Jamaican citizenship and/or ancestry.  See U.S. v. Vue, 13 F.3d 1206, 1213 (8th Cir. 1994); U.S. v. Doe, 903 F.2d 16, 20-23 (D.C. Cir. 1990) (it is error for the district court to allow the government to suggest defendant's guilt of drug crime by virtue of Jamaican ancestry).

---

that he was not a United States citizen[,] [i]n violation of Title 18, United States Code, Section 911.
(D.E. 18, at 1-2.)

[2] Count One of the Superceding Indictment charges Defendant as follows:
On or about May 15, 2007, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant, Gideon William McDonald, did knowingly and intentionally possess with intent to distribute a controlled substance.  This violation involved ... approximately four hundred eighty-two (482) kilograms of marihuana, a Schedule I controlled substance[,] [i]n violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).
(D.E. 18, at 1.)

    C.    The Court GRANTS Defendant's request to exclude any evidence of, or reference to, any document(s) from the Internal Revenue Service and any document evidencing Defendant's 1994 bankruptcy filing which were found in the Defendant's truck at the time of his arrest. The relevance of such documents is slight,[3] and is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

    D.    Pursuant to the agreement of the parties (D.E. 24, at 3), the Court GRANTS Defendant's request to exclude any expert testimony that speaks to the knowledge of Defendant and whether he knew he was transporting drugs based upon the amount of drugs seized. See U.S. v. Ibarra, 493 F.3d 526, 532 (5th Cir. 2007) (requiring a new trial because "the district court allowed DEA Agent Friday to testify that in his experience he had never seen a courier entrusted with an amount of cocaine of that size (worth approximately $4 million) without the courier knowing that he was carrying something illegal").

2.    At the October 5, 2007 status conference, this Court granted Defendant all of the relief requested in "Defendant's Motion for Private Investigator," filed October 25, 2007.[4] (D.E. 33 & 35.) Therefore, this Motion is DENIED as moot.

---

[3] The Government's argument for the admission of these documents is that they demonstrate that Defendant owed money to the I.R.S., and therefore Defendant had a motive for committing the crime charged in Count One of the Superseding Indictment. The Court notes that it is implausible that anyone would commit a drug crime for the purpose of procuring money to pay to the I.R.S. Moreover, there is a substantial risk that the jury would use the evidence improperly as evidence that Defendant possesses bad character. Cf. Fed. R. Evid. 404 (character evidence generally prohibited).

[4] At the October 5, 2007 status conference, this Court granted Defendant's request for authorization to spend up to $1000 for a private investigator, pursuant to 18 U.S.C. § 3006A(e)(1). Because of this, at the November 19, 2007 hearing, defense counsel acknowledged that "Defendant's Motion for Private Investigator" is moot.

3.      "Defendant's Opposed Motion in Limine Pertaining to Truck and Video After Released from Custody" (D.E. 41) is DENIED, until such time as Defendant challenges the authenticity of the truck at issue.[5]

4.      "Defendant's Opposed Motion in Limine Regarding Proposed Expert Testimony and Proposed Video" (D.E. 47 & 38) is GRANTED IN PART and DENIED IN PART as follows.

The Court GRANTS Defendant's request to exclude the video made in Atlanta, Georgia, in which two agents from Immigration and Customs Enforcement ("ICE") purportedly demonstrate how the trailer door latch at issue in this case can be removed without breaking a seal.

In Crawford v. Washington, the Supreme Court held that the right to confrontation in the U.S. Constitution bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004).  The Court declined to provide a comprehensive definition of "testimonial," but noted that a testimonial statement "is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and "includes statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for later use at trial." Id. at 51-52 (citations omitted).  It is clear that the video at issue was "made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for later use at trial," and therefore this video is "testimonial" and must be excluded because Defendant did not have an opportunity to cross-examine the ICE agents at the time.

---

[5] At the November 19, 2007 hearing, defense counsel conceded that the truck which is shown in the video and which is in the custody of the Government is the same truck driven by Defendant into the Falfurrias checkpoint on May 15, 2007.

As discussed during the hearing, if the Government wishes to introduce any such testimonial video, defense counsel and/or his designee must participate in the making of the video so as to address the issues raised by Crawford.

The Court finds that the subject matter of the ICE agents' testimony on the video, and well as the proposed testimony by ICE Case Agent Clay Odom concerning how drug operations work, constitutes "expert" testimony within the meaning of Federal Rule of Evidence 702. To the extent it has not already been done, no later than one day from the date this Order is filed, the Government shall supply to Defendant a summary of the testimony and resume/qualifications of each witness who will be offered to provide expert testimony.[6] See Fed. R. Crim. P. 16(a)(1)(G).

Defendant's generalized request for a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) is DENIED.[7] This denial is without prejudice to Defendant filing, no later than November 28, 2007 at 3:00 p.m., a renewed request for a Daubert hearing which contains Defendant's specific challenge(s) to the Government's proposed expert testimony. See generally Moore v. Ashland Chem., Inc., 151 F.3d 269, 274-77 (5th Cir. 1998).

5. "Defendant's Opposed Motion in Limine Against Testimony of Cooperating Witness" (D.E. 42 & 49) is GRANTED. According to the Government, the cooperating witness at issue is a previously convicted drug trafficker who would testify that he was going to deliver a load of cocaine to a recipient in Atlanta, Georgia who is the registered user of a phone number which appears on Defendant's cell phone toll records. According to the Government, this witness does

---

[6] "Defendant's Opposed Motion to Produce Expert Resume and Testimony Summary" (D.E. 32, 34, 43 & 45) is GRANTED.

[7] Daubert held that Federal Rule of Evidence 702 requires the trial judge to act as a "gatekeeper" to ensure that "any and all [expert] testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) (clarifying that the Daubert gatekeeping function applies to all forms of expert testimony).

not know Defendant, nor does he have any specific knowledge of Defendant's case. Given the tenuous connection between the proposed testimony of the cooperating witness and the Defendant, the Court finds that probative value of this testimony is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

6.     The Court granted Defendant's request for a suppression hearing on the issue of the admissibility of evidence of certain statements made by Defendant at secondary inspection prior to his arrest, as well as a statement made by Defendant on the day after his arrest. (D.E. 40 & 48.)

Two witnesses testified at the suppression hearing.[8] Border Patrol Agent Raymond Lee, a canine handler at the Falfurrias checkpoint at the time of Defendant's arrest, testified as follows. In the afternoon of May 15, 2007, Defendant drove a tractor-trailer into the primary inspection lane at the Falfurrias checkpoint. Agent Lee's canine alerted to the rear of the trailer, and Defendant was directed to secondary inspection. Agent Lee and one other Border Patrol agent, "Agent Ramirez," joined Defendant at secondary inspection.

Once in secondary inspection, Agent Lee conducted a systematic search of Defendant's trailer with his canine and the canine again alerted and indicated to the trailer. Agent Lee asked the Defendant if he and Agent Ramirez could look inside the trailer and the Defendant agreed. Agent Lee asked the Defendant if he saw everything get placed inside of the trailer. The Defendant replied that he did not see everything get placed inside the trailer, because he was tired and slept in the truck's sleeper area while it was being loaded. Agent Lee then asked

---

[8] Both witnesses were offered by the Government. Defendant declined to offer any witnesses at the suppression hearing, although defense counsel cross-examined each Government witness.

Defendant if he took full responsibility for everything inside of the trailer, the Defendant immediately answered, "No."

Agent Lee then broke the seal on the trailer and opened the doors. Agent Lee noticed that there were several boxes inside the trailer which appeared crushed. Agent Lee asked the Defendant if this was a normal way of loading the trailer. The Defendant stated that it was not. The Defendant further stated that the boxes were stacked neatly when they were loaded.

Once the canine and Agent Lee entered the trailer, the canine alerted to some bundles of marijuana. The Defendant was then arrested and given his <u>Miranda</u> rights. The Defendant agreed to answer questions by the Border Patrol Case Agent, Adam Rodriguez, and signed a <u>Miranda</u> rights form indicating such. The Defendant made only one other statement to the Border Patrol Agents: when asked if he wished to make a statement regarding the marijuana, the Defendant stated that he only wanted to say that "the boxes were stacked that way when it was loaded."

The second witness at the suppression hearing was ICE Case Agent Clay Odom, who testified that he visited the Defendant in the Falfurrias checkpoint holding area the morning following Defendant's arrest. Agent Odom testified that he and another ICE Agent were explaining to the Defendant "administrative things," such as that the Defendant could expect to be brought before a U.S. Magistrate Judge for a bond determination hearing, when Defendant made the following unsolicited statement: "I don't know how that stuff got in there. That seal is my savior." Defendant then repeated, "That seal is my savior." According to Agent Odom, no agent asked Defendant any questions; Defendant volunteered the statement.

The Court finds all of the testimony recounted above to be uncontradicted and credible. As discussed more fully below, the Court finds that, based upon the evidence presented at the

suppression hearing, Defendant voluntarily made each of the statements attributed to him by the two witnesses.

A confession or admission cannot be used as evidence at a criminal trial until a judge has made a determination at a separate hearing that the confession or admission was voluntarily made. See Jackson v. Denno, 378 U.S. 368, 377-80 (1964). A defendant is entitled to a fair hearing and reliable determination of the voluntariness of a confession prior to its use at trial. See id. At this hearing, "both the underlying factual issues and the voluntariness of [the] confession [must be] actually and reliably determined." Id. at 380. "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." Sims v. Georgia, 385 U.S. 538, 544 (1967); see also U.S. v. Restrepo, 994 F.2d 173, 184 (5th Cir. 1993).

Based on the Fifth Amendment prohibition against self-incrimination, the Supreme Court held in Miranda that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Miranda's protections attach prior to any "custodial interrogation." U.S. v. Paul, 142 F.3d 836, 843 (5th Cir. 1998). Therefore, the key issues are (1) whether Defendant was in "custody" for Miranda purposes and (2) whether Defendant was being "interrogated" for Miranda purposes.

The Court finds that Defendant was not in "custody" for Miranda purposes at the time he made the pre-arrest statements recounted above. As the Fifth Circuit has repeatedly held, "[r]eferral to secondary inspection at a border checkpoint does not constitute an arrest requiring Miranda warnings." U.S. v. Hernandez, 229 Fed. Appx. 331, 332, 2007 WL 1598176, at *1 (5th

Cir. 2007) (citing U.S. v. Garcia, 616 F.2d 210, 211 (5th Cir. 1980); U.S. v. Martinez, 588 F.2d 495, 497-98 (5th Cir. 1979) ("Miranda warnings need be given only to one who is undergoing custodial interrogation. Appellant was not in custody when asked if he had the trunk key. Rather appellant was being subjected to a routine customs inquiry for which Miranda warnings are unnecessary."); U.S. v. Kiam, 432 F.3d 524, 530 (3d Cir. 2006)); see also U.S. v. Harrell, 894 F.2d 120, 123-25 (5th Cir. 1990) ("We do not believe that the investigatorial questioning by agents during those first few minutes at the immigration checkpoint can be fairly described as a 'custodial interrogation.'"); U.S. v. Bengivenga, 845 F.2d 593, 598-600 (5th Cir. 1988) (en banc) (holding that marijuana–trafficking suspect was not custodially interrogated at border checkpoint, where border stop was routine, luggage emitted strong marijuana odor, and questions to which suspect objected were preliminary queries as to destination and luggage). Therefore, the Motion to Suppress the pre-arrest statements made by Defendant is DENIED.

The only post-arrest statement at issue is Defendant's statement, "I don't know how that stuff got in there. That seal is my savior. That seal is my savior." The Court finds that this statement was not made in response to any question asked by any agent (or any other words or actions on the part of the agents that the agents should know are reasonably likely to elicit an incriminating response from Defendant), but instead was volunteered by Defendant. Therefore, the statement was not the product of "interrogation" for Miranda purposes.[9] See U.S. v. Gonzales, 121 F.3d 928, 939-40 (5th Cir. 1997) ("[Defendant] Gonzales, Jr., was in custody when he made the incriminating statements concerning the cocaine and the firearm, but his comments were not a response to 'questioning initiated by law enforcement officers.' To the

---

[9] Because of this finding, it is irrelevant whether Defendant invoked his right to silence at any time prior to making the unsolicited, voluntary statement. "[T]he Miranda doctrine is inapposite" when "a suspect spontaneously makes a statement." U.S. v. Gonzales, 121 F.3d 928, 940 (5th Cir. 1997).

contrary, Gonzales voluntarily initiated the colloquy, eliciting a response from [the officer]. Accordingly, [the officer]'s request for clarification was not a 'custodial interrogation' for purposes of the Miranda doctrine.... [W]hen a suspect spontaneously makes a statement, officers may request clarification of ambiguous statements without running afoul of the Fifth Amendment.... Under these circumstances, the Miranda doctrine is inapposite."); Sockwell v. Blackburn, 748 F.2d 979, 981 (5th Cir. 1984) ("[T]he Miranda decision does not apply to volunteered statements...."); U.S. v. Yanez, 490 F. Supp. 2d 765, 781 (S.D. Tex. 2007) ("The court finds that Yanez made the first round of incriminating statements outside the pressures of traditional police interrogation or its functional equivalent. Thus, these statements are unquestionably admissible.") (quotation omitted). The Court finds that Defendant's post-arrest statement is admissible.

Therefore, "Defendant's Opposed Motion to Suppress Post Arrest Statements" (D.E. 40 & 48) is DENIED.

7. "Defendant's Unopposed Motion in Limine Against Argumentative Statements in Opening" (D.E. 37, 44 & 46) is GRANTED. The Government shall not refer to Defendant in opening statement as a "drug trafficker" or any other similar conclusory label.

8. Defendant's sealed motion (D.E. 36) was addressed during a sealed portion of the November 19, 2007 hearing.

SIGNED and ORDERED this 21st day of November, 2007.

_____
Janis Graham Jack
United States District Judge